UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANET DRUM FOUNDATION,<br><br>    Plaintiff,<br><br>    v.<br><br>MICKEY HART, et al.,<br><br>    Defendants. | Case No. 17-cv-02676-JCS<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 12 |

## I. INTRODUCTION

Plaintiff Planet Drum Foundation is the owner of U.S. Trademark Registration No. 343732, issued on March 5, 1996, for the mark PLANET DRUM ("the Mark" or "the Planet Drum mark"). Planet Drum Foundation brings a trademark infringement action against Defendants Mickey Hart and 360° Productions ("360") based on their alleged infringement of the Mark. Presently before the Court is Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion"). A hearing on the Motion was held on Friday, September 22, 2017 at 2:00 p.m. For the reasons stated below, the Motion is DENIED.[1]

## II. BACKGROUND

### A. The Complaint

Planet Drum Foundation is a California 501(c)(3) nonprofit corporation based in San Francisco California. Compl. ¶ 4. It was founded in 1973 under the name "Planet Drum." *Id.* According to the Complaint, Planet Drum Foundation's "mission has always been to provide an

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

effective grassroots approach to ecology that emphasizes sustainability, community self-determination and regional self-reliance." Planet Drum Foundation further alleges that it "encourages local organizations and individuals to find sustainable ways to live within the natural confines of their bioregions, and identifies cultural diversity as an integral component of biodiversity." *Id.* Planet Drum Foundation has published and distributed over fifty publications and conducts workshops and presentations all over the world. *Id.* ¶ 5. It also "sponsors projects and activities related to ecology education, watershed consciousness, restoration ecology, green cities, sustainable agriculture, and renewable energy." *Id.* The Planet Drum mark was issued on March 5, 1996 and is "used for 'books, and newsletters in the field of ecology, maps and posters' in Class 16 and for 'educational services, namely organizing seminars, conferences and workshops in the field of ecology' in Class 41." *Id.* ¶ 6.

Defendant Mickey Hart "is an American percussionist and musicologist" who "was a member of the Grateful Dead for many years." In addition, he has "had a successful career as a solo artist, percussionist, and author of several books" and "has pursued a lifelong interest in ethnomusicology and in world music." *Id.* ¶ 7. Hart has "participated in recording global musical traditions on the verge of possible extinction and has worked with archivists and ethnomusicologists toward that end." *Id.* 360 is a "musical production and management company that owns and/or holds certain rights in recordings by Mickey Hart and musicians he collaborates with" and "is the owner of the copyrights and the master recordings to a musical album of approximately 13 song titles collectively released under the album name 'Planet Drum' in the year 1991, and a 2-CD album, 'Planet Drum - Supralingua,' released in 1998." *Id.* ¶ 8.

Planet Drum Foundation alleges that it has used the Mark continuously since 1973 in connection with the services described above, and that its use of the Mark has been "continuous and uninterrupted." *Id.* ¶ 9. It further alleges that in 1991, Hart began using the mark "Planet Drum" in connection with live performances and the release of his Planet Drum album. *Id.* According to Planet Drum Foundation, "[p]rior to adopting the Planet Drum mark, Hart approached Peter Berg, Founder and Director of Planet Drum Foundation, and requested permission to use the mark 'Planet Drum' for a series of concerts and a book." *Id.* ¶ 10. Berg

"informally consented" but required that "an explanation distinguishing the parties . . . be included" with Hart's products. *Id.*

In the "1997-1998 time frame," the parties began to discuss a formal trademark license agreement and entered into such an agreement in 1998. *Id.* & Ex. 1. Under the license agreement ("License Agreement"), Planet Drum Foundation is the "Licensor" and 360 is the "Licensee." *Id.*, Ex. 1 (License Agreement), Section 1 (definitions). Section 2 of the License Agreement describes the scope of the license, stating as follows:

> **2. License Grant.** Licensor hereby grants to Licensee and Licensee hereby accepts from Licensor, an exclusive, nontransferable, license for the Territory, subject to the terms and conditions of this Agreement, to use the Marks in the name of its musical group, in connection with sale and distribution of related Merchandise bearing the Marks, and for related advertising of such uses. The exclusivity of this License shall extend only to musical groups but Licensor agrees that it shall not issue licenses nor engage in uses of the Marks which may cause confusion with respect to the source of Merchandise authorized for production under this Agreement. Licensor and Licensee agree that certain other uses of the Marks by Licensee have been informally approved by Licensor in the past including, without limitation, use of the Marks in connection with musical performances, and a book and sound recording entitled: "Planet Drum." This License memorializes Licensor's approval of all such past uses by Licensee and its predecessors in interest.

*Id.*, Section 2.

Section 3 addresses ownership of the Mark, providing as follows:

> **3. Ownership of Marks.** Licensee acknowledges that, as between the Parties, Licensor owns the Marks and Licensee agrees that it will do nothing inconsistent with such ownership during or subsequent to the Term hereof or any Option period and that all use of the Marks by Licensee shall inure to the benefit of and be on behalf of Licensor. In the event the initial Term or any extension thereof expires without renewal, or in the event of termination for any reason, Licensor agrees that it shall not extend a license for use of the Marks to any other musical group at any time.

*Id.,* Section 3.

Although Hart is not a party to the License Agreement, he signed the agreement on behalf of 360 and the license grant is contingent on Hart "retaining a controlling interest" in 360. *Id.,* Section 4. In particular, the "Quality Control" section of the License Agreement provides as follows:

3

> **4.1 Mickey Hart.** During the term of this Agreement, Licensee may utilize the Marks in connection with future materials related to the musical group 'Planet Drum' and world rhythm and music publications and events without the necessity of seeking express approvals for such uses; provided, however, that Licensor may object to any such use and Licensee agrees to discuss any such use claimed to be objectionable with Licensor in good faith to resolve any objection raised. Licensee's right to utilize the Marks in any manner not previously approved by Licensor, or to which Licensor has not objected within a reasonable time, is expressly contingent upon Mickey Hart retaining a controlling interest in Licensee.
>
> **4.2 Form of Use**. Licensee agrees to use the Marks in the general form and manner in which the Marks have historically been used by Licensee and, to the extent practical, with appropriate legends as prescribed from time to time by Licensor. The design of the Planet Drum logo created and used by Licensee and other uses by Licensee may change from time to time.
>
> **4.3 Notification of Uses of the Marks.** Although prior approval is not necessary for use of the Marks, as long as Mickey Hart is exercising control of such usage, Licensee shall annually provide Licensor with a list of the items and samples or photographs of items on which it has used or intends to use the Marks.

*Id.,* Section 4.

Under the License Agreement, 360 was to pay $5,000 in royalty fees for use of the Mark through March 31, 1999 and thereafter make an annual royalty payment of $5000, payable on April 1, for "so long as the initial Term continues, provided the [License] Agreement has not been terminated." *Id.*, Section 6. The term of the License Agreement was five years "unless terminated earlier under the provisions of this Agreement." *Id.*, Section 8.1. The License Agreement could be terminated "for convenience" (Section 8.3), "for cause" (Section 8.4) and "termination for insolvency (Section 8.5). Section 8.6 sets forth the "Effects of Termination," providing as follows:

> **8.6 Effect of Termination.** In the event of termination, Licensee shall be permitted to continue utilizing the Marks as the name of a performing musical group and to liquidate any existing inventory of pre-approved materials bearing the Marks which use and liquidation may continue for a period of one hundred eighty (180) days following termination, subject to payment of any License Fees due pursuant to section 6 hereof.
>
> Any materials bearing the Marks which were approved prior to the Effective Date and which are produced pursuant to contractual arrangements with third parties which provide for continued production including, without limitation, the book and record albums bearing the title: "Planet Drum," may continue in production

and distribution until such time as the third party contracts, including options thereto, have been fulfilled. Licensee shall also be permitted to fulfill any contractual commitments to perform as a musical group using the Planet Drum name which exist on the date of termination.

*Id.*, Section 8.6.

Section 10.4 of the License Agreement governs waiver and provides as follows:

**10.4 Waiver.** No delay, omission, or failure to exercise any right or remedy provided for in this Agreement shall be deemed to be a waiver thereof or an acquiescence in the event giving rise to such remedy, but every such right or remedy may be exercised, from time to time, as may be deemed expedient by the Party exercising such right or remedy.

*Id.*, Section 10.4.

Hart and 360 made a series of payments under the License Agreement, the last of which was in June 1999 for $5,000. Compl. ¶ 14. After Planet Drum Foundation did not receive a payment on April 1, 2000, it sent a letter, dated May 25, 2000, offering a thirty-day extension to allow time to discuss possible modification of 360's payment obligations under the License Agreement. *Id.* ¶ 15 & Ex. 2 (May 25, 2000 Letter). On June 30, 2000, Planet Drum Foundation terminated the License Agreement under Section 8.4 after 360 did not accept the alternative proposed by Planet Drum Foundation. *Id*. ¶ 16 & Ex. 3 (June 30, 2000 Letter). The letter stated that "[a]ny future use of the trademark 'Planet Drum' in recorded, written, cinematic, installation, or any other form will require re-licensing under terms of a newly negotiated agreement." *Id.* Ex. 3.

Planet Drum Foundation alleges that "approximately July 2006, it came to Plaintiff's attention that Defendants were continuing to use the Mark and were intending to hold concerts featuring the Mark." *Id.* ¶ 17. Although the parties "entered into negotiations concerning a renewed or revised license agreement" and exchanged a draft license agreement "tracking closely the terms of the original Agreement executed in 1998," the "draft renewal agreement was not fully executed." *Id.* Although no new agreement was executed, "around that same time, Rex Foundation, a charitable organization affiliated with Defendants, made a payment of $5000" to Planet Drum Foundation. *Id*. According to Planet Drum Foundation, "[i]t appeared as though

5

1  Defendants had decided to pay the annual license fee set forth in the 1998 Agreement (Exhibit 1)
2  that Plaintiff had terminated in June of 2000 (Exhibit 3) and that was under negotiation between
3  the parties in the 2006 time frame." *Id.*

Planet Drum Foundations alleges that in 2007, negotiations continued, and that "[a]s part of those discussions, Defendants proposed changing their name to 'Planet Drumz.'" *Id.* ¶ 18. Planet Drum Foundation rejected that proposal. *Id.* Hart's attorney then sent to Planet Drum Foundation's counsel a press release in which Hart and 360 "announced that they intended to stop using the mark PLANET DRUM in part in order 'to avoid confusion' and would immediately change over to 'Global Drum Project' as a 'new name.'" *Id.* & Ex. 4 (undated press release). According to Planet Drum Foundation, upon receipt of the press release, it "assumed that the problem was resolved." *Id.*

According to Planet Drum Foundation, between June 2007, when it received the Rex Foundation payment of $5,000, up to the date of filing of its complaint, Hart and 360 made no royalty payments, and Planet Drum Foundation "had assumed that Defendants had ceased their use of the Mark." *Id.* ¶ 19. Planet Drum alleges "on information and belief [that] there have been no concerts or events featuring the Mark in connection with the offering of services, although Defendants have continued making a low level of unauthorized album and book sales on which the Mark is used, according to records provided by Defendants to Plaintiff towards the end of 2016 reflecting sales in recent years." *Id.*

In September 2016, Defendants' attorney, Barry Melton, contacted the current director of Planet Drum Foundation to "request permission to use the Mark in connection with what Melton referred to as a 're-cataloging' of the musical recordings on the original album." *Id.* ¶ 20. In fact, Planet Drum Foundation alleges, Hart and 360 were planning a re-release of the 1991 Planet Drum album. *Id.* ¶ 21 & Ex. 5 (web page describing re-release). According to Planet Drum Foundation, "'Re-cataloging' had no meaning but was part of a subterfuge by Defendants 'to defuse passions' (to use Defendants' counsel's phrase) in connection with the anticipated publicity and increased likelihood of confusion related to the imminent unauthorized re-release of Defendants' original PLANET DRUM album under the name 'PLANET DRUM.'" *Id.* Planet Drum Foundation

6

further alleges that "[t]he J-card included with this re-release of the album has on the bottom of the inside back page a paragraph describing Plaintiff's Planet Drum Foundation, an attempt by Defendants to comply with the earlier requirement to distinguish Plaintiff from Defendants on Defendants' products and as referenced in Paragraph 4.2 of the Agreement . . . ." *Id.*

Although the parties continued to negotiate, on April 10, 2017 "it became obvious that the parties had sharply divergent views of the parties' respective legal positions and that judicial intervention was required." *Id.* ¶ 23.

Based on these factual allegations, Planet Drum Foundation asserts two claims under the Lanham Act: 1) a claim for trademark infringement under 15 U.S.C. § 1114(1) ("the Trademark Infringement Claim"); and 2) a claim for false designation of origin and false advertising under 15 U.S.C. § 1125(a) ("the False Designation of Origin Claim"). In the Trademark Infringement Claim, Planet Drum Foundation alleges that it owns the Planet Drum mark and that it "uses this important and valuable mark as a designation of source and quality of its goods and services related to ecology and urban development projects and related types of socially beneficial projects, and related publications and merchandise focused on communities world-wide, including third world countries." *Id.* ¶ 25. It further alleges that "[b]ased on their unwillingness and refusal to make payments under the terms of that [License]Agreement and to comply with other obligations, Defendants are hold-over licensees and their continued use and exploitation of the Mark is an infringing use." *Id*. ¶ 26. Planet Drum Foundation alleges that "Defendants are using a mark identical to Plaintiff's PLANET DRUM Mark in a manner that is likely to confuse, deceive and/or cause mistake among consumers and therefore its use is infringing Plaintiff's Mark in violation of 15 U.S.C. § 1114(1)." *Id*. Planet Drum Foundation seeks money damages and injunctive relief on this claim.

In support of the False Designation of Origin Claim, Planet Drum Foundation alleges that "[t]he acts of Defendant alleged herein are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Defendants' products or services with those services of Plaintiff, or as to the sponsorship, or approval of Defendants' products or activities by Plaintiff." *Id.* ¶ 31. It further alleges that Hart and 360's "actions further

7

misrepresent the nature, characteristics or qualities of Defendants' products and services and activities." Planet Drum Foundation seeks money damages and injunctive relief on this claim as well.

### B. The Motion

In the Motion, Hart and 360 assert that Planet Drum Foundation's claims should be dismissed on three grounds: 1) the claims are barred under the doctrine of laches because Planet Drum Foundation "sat on its rights for over seventeen years to the detriment of Defendants"; 2) Planet Drum Foundation's inaction for seventeen years constitutes "naked licensing," which estops it from asserting Lanham Act claims against Defendants; and 3) Planet Drum Foundation has failed to adequately allege likelihood of trademark confusion "given that (a) Defendants' goods and services are unrelated to Plaintiff's, (b) there is no evidence of actual confusion, (c) Plaintiff and Defendants sell their respective goods and services through different marketing channels, and (d) Plaintiff has not expanded into the music business and is not likely to do so now." Motion at 1.

Planet Drum Foundation contends the first two arguments are incorrect on the merits and also that they involve fact-intensive inquiries that cannot be decided at the pleading stage of the case. As to the third argument, Planet Drum Foundation argues that it has adequately pled likelihood of confusion under Rule 8 of the Federal Rules of Civil Procedure. Moreover, it argues, the specific facts Defendants contend must be alleged are based on the factors articulated in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), but that case does not apply here because Hart and 360 willfully infringe the Mark by using a mark that they had agreed in the License Agreement belonged to Planet Drum Foundation.[2]

---

[2] Planet Drum Foundation asks the Court to take judicial notice under Rule 201 of the Federal Rules of Evidence of a Wikipedia page about Mickey Hart that was referenced in the Complaint. Rule 201(b)(2) allows courts to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Numerous courts have held that Wikipedia pages are not sufficiently reliable to meet the requirement of Rule 201(b)(2). *See, e.g. Polanco v. E. Chigago Mach. Tool Corp.*, No. CV1108927MMMMRWX, 2012 WL 12886209, at *4 (C.D. Cal. June 26, 2012) (declining take judicial notice of Wikipedia article on the basis that it was not sufficiently reliable); *Capcom Co., Ltd. v. MKR Group, Inc.*, No. C 08-0904 RS, 2008 WL 4661479, *4 (N.D.

8

## III. ANALYSIS

### A. Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a [pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow[] the court to

---

Cal. Oct. 20, 2008) (same); *BP Products North America Inc. v. U.S.*, 716 F.Supp.2d 1291, 1295 (CIT 2010) (same). The Court need not reach this question, however, because it does not rely on the attached web page in deciding the instant motion. Therefore, the Court does not rule on Planet Drum Foundation's request for judicial notice.

9

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. Laches

Laches is "an equitable defense that bars the claims of a plaintiff who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005), abrogated on other grounds by *Taylor v. Sturgell*, 553 U.S. 880, 904 (2008) (quotation omitted). "It is well established that laches is a valid defense to Lanham Act claims . . . ." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). "To obtain a judgment on this affirmative defense, a defendant must prove 'both an unreasonable delay by the plaintiff and prejudice to itself.'" *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000) (quoting *Couveau v. American Airlines*, 218 F.3d 1078, 1083 (9th Cir. 2000)).

"A determination of whether a party exercised unreasonable delay in filing suit consists of two steps." *Jarrow*, 304 F.3d at 838 (citing *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952-955 (9th Cir. 2001)). First, the court must assess the length of delay, "which is measured from the time the plaintiff knew or should have known about its potential cause of action." *Id.* (citing *Kling*, 225 F.3d at 1036; *Portland Audubon Soc'y v. Lujan*, 884 F.2d 1233, 1241 (9th Cir.1989). Second, the court decides whether the plaintiff's delay was reasonable. *Id.*; *see also Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006) ("In considering whether a plaintiff's delay was unreasonable, courts consider: (1) the length of the delay, measured from the time the plaintiff knew or should have known about his potential cause of action, and (2) whether the plaintiff's delay was reasonable, including whether the plaintiff has proffered a legitimate excuse for his delay.").

With respect to prejudice, "[c]ourts have recognized two chief forms of prejudice in the laches context—evidentiary and expectations-based." *Danjaq LLC*, 263 F.3d at 955. "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." *Id.* (citations omitted). Expectation-based prejudice arises where a defendant "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Id*. (citations omitted).

Where an action for trademark infringement is filed outside of the limitations period for the analogous state law cause of action, a rebuttable presumption of laches arises. *Jarrow,* 304 F.3d at 837. That presumption can be rebutted by offering evidence that the delay was reasonable or that the defendant suffered neither evidentiary nor expectation-based prejudice. *See Expert Microsystems, Inc. v. Univ. of Chicago*, 712 F. Supp. 2d 1116, 1120 (E.D. Cal. 2010). In addition, laches does not apply where the infringement was willful. *Danjaq*, 263 F.3d at 957. Under *Danjaq*, willful infringement refers to conduct that occurs with knowledge that the conduct constitutes infringement. *Id.*

Here, the parties agree that under the analogous California statues governing trademark infringement, the applicable limitations period, for the purposes of laches, is four years. *See id.* Because the License Agreement expired *seventeen* years ago, Defendants argue that there is a presumption of laches in this case and that Planet Drum Foundation has not alleged facts showing that it can rebut that presumption. The Court concludes that it is premature to resolve the question of whether laches applies to Planet Drum Foundation's claims.

"Determining whether delay was unexcused or unreasonable and whether prejudice ensued necessarily demands 'a close evaluation of all the particular facts in a case.'" *L.B. v. W. Contra Costa Unified Sch. Dist.*, No. 16-CV-04382-DMR, 2017 WL 1208394, at *6 (N.D. Cal. Apr. 3, 2017) (quoting *Kling*, 225 F.3d 1030, 1041 (9th Cir. 2000)). Indeed, whether the presumption arises in the first instance turns on when the plaintiff knew or should have known of the alleged infringement and whether the plaintiff delayed more than the allowable time period, which is typically a fact question. *See Adidas Am., Inc. v. Payless Shoesource, Inc*., 540 F. Supp. 2d 1176, 1180 (D. Or. 2008). Consequently, a laches defenses "is seldom susceptible of resolution by summary judgment" and "[a]t the motion-to-dismiss phase, the obstacle to asserting a successful laches defense is even greater." *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005), abrogated on other grounds by *Taylor v. Sturgell*, 553 U.S. 880 (2008); *see also Bratton v. Bethlehem Steel Corp*., 649 F.2d 658, 666–67 (9th Cir. 1980) ("Laches questions are seldom susceptible of resolution by summary judgment, because where laches is raised as a defense the factual issues involved can rarely be resolved without some preliminary evidentiary inquiry.")

(internal quotations and ellipses omitted). Thus, it is not surprising that virtually every case cited by Defendants in the Motion in support of their laches argument was decided on summary judgment or after trial and *not* on a motion to dismiss under Rule 12(b)(6). *See* Motion at 8 (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996) (deciding following trial that laches applied after previously holding that material issues of fact precluded summary judgment on the defense); *Tillamook Country Smoker, Inc. v. Tillamook County Creamer Ass'n*, 465 F.3d 1102 (9th Cir. 2006) (deciding on summary judgment that laches applied); *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 978 (9th Cir. 2006) (deciding on summary judgment that laches applied); *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1102 (9th Cir. 2004) (deciding on summary judgment that laches applied); *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983) (deciding after trial that laches applied); *Dropbox, Inc. v. Thru Inc.*, No. 15-CV-01741-EMC, 2016 WL 6696042 (N.D. Cal. Nov. 15, 2016), supplemented, No. 15-CV-01741-EMC, 2016 WL 7116717 (N.D. Cal. Dec. 7, 2016) (deciding on summary judgment that laches applied ); *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096 (N.D. Cal. 2008) (deciding on summary judgment that laches applied)).

While it is true that a court can grant a motion to dismiss "when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the [defense]," Defendants have not shown that that standard is met here. *George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 655 (S.D.N.Y. 2014). To the contrary, it is clear Defendants' laches defense will turn on factual questions about when Planet Drum Foundation knew or should have known about the alleged infringement, the reasonableness of the delay in bringing this action, whether the delay resulted in evidentiary or expectation-based prejudice to Defendants and whether infringement was deliberate.[3]

---

[3] The Court notes that Defendants cite a single case in which a court dismissed a plaintiff's claims on the basis of laches on a motion to dismiss: *Fitzpatrick v. Sony-BMG Music Entm't, Inc.*, No. 07CIV.2933(SAS), 2007 WL 2398801, at *4 (S.D.N.Y. Aug. 15, 2007). That case is not on point. In *Fitzpatrick*, the plaintiff did not dispute the date on which he first discovered the defendants' involvement in the alleged trademark infringement, which was outside of the applicable limitations period. *Id.* Nor did he dispute the alleged prejudice against the defendants caused by his delay in bringing the action. *Id.* His only allegations aimed at rebutting the presumption of

12

Therefore, the Court rejects Defendants' invitation to dismiss Planet Drum Foundation's claims on the pleadings under the doctrine of laches.

### C. Naked License

Naked licensing is a defense to trademark infringement based on the theory that "if a trademark owner fails to control the quality of the goods and services sold under that trademark by its licensees, the trademark may cease to function as a symbol of quality and source for consumers and effectively be considered to have been abandoned." *Monster, Inc. v. Dolby Labs. Licensing Corp*., 920 F. Supp. 2d 1066, 1076 (N.D. Cal. 2013) (citing *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515-16 (9th Cir. 2010) (citing *Barcamerica Intern. USA Trust v. Tyfield Importers, Inc*., 289 F.3d 589, 595–96 (9th Cir. 2002) and 3 McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.)). "Thus, the naked licensing claim is fundamentally a claim that the trademark is no longer valid and enforceable because of the licensor's neglect in policing its use." *Id.* "[B]ecause the theory is essentially one of forfeiture of trademark rights, the Ninth Circuit has described the standard required of the trademark challenger as 'stringent.'" *Id.* (quoting *FreecycleSunnyvale*, 626 F.3d at 514) (quoting *Barcamerica*, 289 F.3d at 596).

Defendants do not argue that the License Agreement contained insufficient quality control requirements; instead, they contend Planet Drum Foundation failed to exercise actual control *after* the License Agreement was terminated and that it was this lack of control that constituted naked licensing. As a preliminary matter, the Court notes that Defendants have not pointed to a single case in which a trademark has been invalidated on a "naked licensing" theory at the pleading stage of the case. Moreover, it is not clear from the face of the complaint that Planet Drum Foundation will be unable to defeat this defense. The Complaint alleges that Mickey Hart and Planet Drum

---

laches addressed reasonableness of the delay and were based on the assertion that he had waited to bring the action until after he had resolved a trademark action asserted against a different defendant before the Trademark Trial and Appeal Board ("TTAB"). *Id*. at *3. The court found that that excuse was not sufficient, as a matter of law, because "[c]ourts have long recognized that other litigation excuses a plaintiff's delay in bringing suit only when the new defendant is put on notice that the plaintiff intends to sue him when the earlier action terminates" and the plaintiff had not given such notice. *Id.* at * 4.

Foundation's founder, Peter Berg, were able to agree informally on how Mickey Hart and 360 would use the Mark and that this informal relationship was successful for approximately seven years. Complaint ¶ 10. It further alleges that the License Agreement expressly linked "quality control" with Mickey Hart's controlling interest in 360, supporting an inference that Hart's involvement had protected the Mark in the years prior to entering a formal agreement. As there is no allegation that Hart no longer has a controlling interest in 360, it is not apparent from the pleadings that Planet Drum Foundation abandoned its Mark through inaction. Accordingly, the Court denies the Motion on this ground.

### D. Likelihood of Confusion

"The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053–54 (9th Cir. 1999) (citations and internal quotations omitted). In *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), the Ninth Circuit set forth an eight-factor test "intended to guide the court in assessing the basic question of likelihood of confusion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir.1992). The so-called "*Sleekcraft* factors" are as follows: "1) strength of the mark; 2) proximity of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) type of goods and the degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines." *Sleekcraft*, 599 F.2d at 348-49.

The ultimate question of likelihood of confusion "is predominantly factual in nature," as is each factor within the *Sleekcraft* likelihood of confusion test. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir. 1997)). Further, the Ninth Circuit has cautioned that the *Sleekcraft* test is "pliant" and that "[s]ome factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Brookfield*, 174 F.3d at 1053–54. Conversely, while "some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to

likelihood of confusion after considering only a subset of the factors. " *Id.* (citation omitted). Finally, "the foregoing list does not purport to be exhaustive, and non-listed variables may often be quite important." *Id.*

Here, Planet Drum Foundation contends it has adequately alleged likelihood of confusion, pointing to the notice pleading requirements of Rule 8(a). The Court agrees. Planet Drum Foundation has alleged that Defendants have used the Planet Drum mark without its permission and that their unauthorized use creates a likelihood of confusion. At the pleading stage of the case, it is enough that the mark used by Defendants is identical. While Planet Drum Foundation's allegations do appear to establish that some of the *Sleekcraft* factors do not support a finding of likelihood of confusion, given the flexible application of the test the Court does not find that these allegations are sufficient to show that Planet Drum Foundation's claims are subject to dismissal at the pleading stage of the case. Moreover, as was the case with respect to Defendants' other arguments, Defendants have not pointed to any cases that are on point in which the court decided this question on a Rule 12(b)(6) motion. Therefore, the Court concludes that dismissal of Planet Drum Foundation's claims on this basis is not warranted.[4]

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Date: September 24, 2017

JOSEPH C. SPERO
Chief Magistrate Judge

---

[4] In reaching this conclusion the Court does not, however, accept Planet Drum Foundation's argument that it does not need to establish likelihood of confusion under *Sleekcraft* because "[w]here a licensee persists in the unauthorized use of a licensor's trademark, courts have found that the continued use alone establishes a likelihood of consumer confusion. *Sun Microsystems, Inc. v. Microsoft Corp.*, 999 F. Supp. 1301, 1311 (N.D. Cal. 1998). While a handful of district court cases have found that the court need not go through the *Sleekcraft* analysis where a licensing agreement between the parties has lapsed or been terminated, those cases are limited to the preliminary injunction context. Further, the Court finds no decisions by the Ninth Circuit that suggests that such a broad rule applies in determining whether there is a likelihood of confusion for the purposes of trademark infringement.